IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHELE E., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 19-CV-247-JFJ |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Michele E. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), and 423. In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court **REVERSES and REMANDS** the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.     General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established

by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

Plaintiff, then a 41-year-old female, applied for Title II disability insurance benefits on September 2, 2014, alleging a disability onset date of February 28, 2014. R. 19, 252-255. Plaintiff's claim for benefits was denied initially on January 12, 2015, and on reconsideration on May 27, 2015. R. 92-119. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted a hearing on February 22, 2017. R. 47-75. The ALJ issued a decision denying benefits which was remanded by the Appeals Council on May 15, 2018. R. 140-143. Accordingly, the ALJ further developed the record and held an additional hearing on September 5, 2018. R. 76-91. The ALJ issued a second decision on September 25, 2018, again denying benefits and finding Plaintiff not disabled because she was able to perform other work existing in the national economy. R. 16-38. The Appeals Council denied review, and Plaintiff appealed. R. 1-5; ECF No. 2.

The ALJ found that Plaintiff's date last insured was June 30, 2018. R. 21. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of February 28, 2014. R. 22. At step two, the ALJ found that Plaintiff had the following severe impairments: bipolar disorder, mood disorder, personality disorder, panic disorder, degenerative disc disease ("DDD") status post anterior lumbar interbody fusion, obesity, and fibromyalgia ("FM"). *Id.* The ALJ also found Plaintiff's hypertension to be a non-severe impairment. At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments. R. 22-24. In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had moderate limitations in all four functional areas – understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. R. 24.

After evaluating the objective and opinion evidence, Plaintiff's mother's statement, and Plaintiff's statements, the ALJ concluded that Plaintiff had the RFC to perform a reduced range of sedentary work as follows:

> [T]he claimant can occasionally lift and/or carry ten pounds and frequently lift and/or carry up to ten pounds. She can stand and/or walk at least two hours in an eight-hour workday. She can sit at least six hours in an eight-hour workday. She can perform simple and repetitive tasks. She can interact with supervisors and coworkers only occasionally. She cannot work with the public.

R. 25. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 36. Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other unskilled light work, such as a Final Assembler, Order Clerk, or Polisher. R. 37-38. The ALJ determined the VE's testimony was "consistent with the information contained in the Dictionary of Occupational Titles" ("DOT"). R. 38. Based on the VE's testimony,

4

the ALJ concluded these positions existed in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled.

**III.   Issues**

Plaintiff raises two points of error in her challenge to the denial of benefits: (1) "[T]he ALJ committed reversible legal error by failing to properly evaluate the opinions of [Plaintiff's] treating psychiatrist, Dr. Hutchins"; and (2) "[t]he ALJ's findings at step five of the sequential evaluation process were not supported by substantial evidence." ECF No. 19 at 5.

For the reasons explained below, the Court reverses the decision based on issues raised in the second allegation of error. Specifically, the ALJ erred in concluding that Plaintiff's RFC is compatible with the Order Clerk job, where an unresolved conflict exists between the VE's testimony and the DOT. The error is harmful, because a significant number of jobs does not remain if the Order Clerk job is excluded. The Court does not reach the first point of error.

**IV.   Analysis**

    **A.   Compatibility of RFC with Jobs Identified by VE**

Plaintiff contends he could not perform the job of Order Clerk identified by the VE, because the DOT assigns it a reasoning level of three, which is inconsistent with the ALJ's finding that Plaintiff could perform only "simple and repetitive tasks." R. 25. *See* DOT #209.567-014 (Order Clerk).

The reasoning level component is a classification under the General Educational Development ("GED") scale. DOT App'x C, § III, 1991 WL 688702. The GED scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development. *Id.* The "Reasoning Development" division of the GED scale is divided into six levels. A job with a reasoning level of three requires the worker to "[a]pply commonsense

understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." *Id.*

The Tenth Circuit has stated that an RFC limitation to "simple and routine" work tasks "seems inconsistent with the demands of level-three reasoning." *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005). The Tenth Circuit in *Hackett* noted that this RFC limitation appeared more consistent with level-two reasoning, which requires the worker to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations." *Id.* (quoting DOT, App'x C, § III) (quotation marks and alterations omitted). Accordingly, the Tenth Circuit in *Hackett* reversed and remanded the ALJ's decision "to allow the ALJ to address the apparent conflict between Plaintiff's inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her by the VE." *Id. See also Pritchett v. Astrue*, 220 F. App'x 790, 793 (10th Cir. 2007) ("As in *Hackett,* a level-three reasoning requirement seems inconsistent with the ALJ's conclusion that plaintiff can only do jobs which present simple, repetitive and routine tasks"); *Ruggles v. Berryhill*, No. 17-CV-270-JED-GBC, 2018 WL 4945234, at *2 (N.D. Okla. Aug. 9, 2018) (concluding that *Hackett* compelled a finding of an unresolved inconsistency between claimant's limitation to "simple, repetitive and routine work" and VE's testimony that claimant could perform jobs that required level-three reasoning); *Cain v. Berryhill*, No. 16-CV-640-GKF-FHM, 2018 WL 1247876, at *2-4 (N.D. Okla. Mar. 9, 2018) (same).

The Tenth Circuit has further explained that "the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of

6

nondisability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). *See Hackett*, 395 F.3d at 1175 (applying *Haddock* to GED reasoning level discrepancy). "The conflict must be explained irrespective of how the conflict was identified, and regardless of whether the vocational expert testifies to a discrepancy." *Cain*, 2018 WL 1247876, at *3 (quotations omitted).

In this case, the Court finds that a conflict existed between the DOT and the VE's testimony.[1] The VE testified that a hypothetical individual with Plaintiff's RFC could perform the job of Order Clerk, and she noted that the position had an SVP of two, but the VE did not refer to the GED for that position. *See* R. 86. Nor did the ALJ elicit testimony from the VE regarding how level-three reasoning was consistent with Plaintiff's RFC, which indicates an ability to perform only "simple repetitive tasks." R. 37, 86-87. There was no inquiry regarding the consistency of GED reasoning level and the identified jobs. Based on this evidence, the Court concludes that the ALJ failed to provide a reasonable explanation in support of his finding that the VE's testimony "is consistent with the information contained in the Dictionary of Occupational Titles." R. 38. *See Haddock*, 196 F.3d at 1091. Therefore, an unresolved conflict exists between Plaintiff's ability to perform "simple and repetitive tasks" and the demands of GED level-three reasoning required by the Order Clerk job.[2]

B.    **Sufficient Number of Jobs in the National Economy**

Even if the ALJ erred by failing to elicit a reasonable explanation for the apparent conflict between Plaintiff's RFC and the level-three reasoning required to perform the Order Clerk job, the

---

[1] The Commissioner appears to concede that a conflict exist, *see* ECF No. 27 at 9, but argues that any error was harmless.

[2] Plaintiff further contends this job contains another unexplained conflict with the RFC because the DOT description includes interaction with customers, which would be precluded by the restriction from interaction with the general public. This is a valid concern, as the fifth digit of the DOT number, in this case, "6," deals with "People" and a 6 corresponds to "Speaking." Upon remand, the ALJ should also consider and address this potential conflict.

ALJ's decision may still be upheld if the other identified positions exist in significant numbers in the national economy and do not conflict with Plaintiff's RFC. *See Cain*, 2018 WL 1247876, at *4 (collecting cases); 42 U.S.C. § 423(d)(2)(A). The VE identified two other jobs that Plaintiff could perform – Final Assembler and Polisher. R. 37, 86. The Commissioner argues these remaining jobs comprise a significant number of jobs in the national economy that Plaintiff can perform, even if the Order Clerk job is eliminated.

The VE testified there are "25,000 plus" Final Assembler jobs and "25,000 plus" Polisher jobs in the national economy. R. 37, 86. The ALJ made no specific finding that these two positions separately existed in significant numbers in the national economy, relying instead on the aggregate number of all three positions – 75,000. *See* R. 37-38. Therefore, to affirm the ALJ's decision, the Court would have to make the determination that the number of Final Assembler and Polisher positions – 50,000 – constitutes a significant number of jobs in the national economy.

There is no magic number that qualifies as a "significant number" of jobs. *See Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992). The Tenth Circuit has made it clear that "judicial line-drawing" in the context of deciding that a particular number of jobs is significant under the circumstances "is inappropriate." *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004). Rather, the evaluation of numerical significance, which "entails many fact-specific considerations requiring individualized evaluation," "should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Id.* (quoting *Trimiar*, 966 F.2d at 1330) (quotation marks omitted). Only in "the right exceptional circumstance," in which no reasonable administrative factfinder could have resolved the factual matter in any other way, is it appropriate for the district court "to supply a missing dispositive finding under the rubric of harmless error." *Id.* at 1145.

The Commissioner argues a judicial finding that 50,000 is a "significant number" of jobs is appropriate, citing two unpublished cases in support. *See Evans v. Colvin,* 640 F. App'x 731, 736 (10th Cir. 2016); *Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) (suggesting that 11,000 national jobs was a significant number).[3] However, the Tenth Circuit's unpublished opinions on this issue have been inconsistent. *See Norris v. Barnhart*, 197 F. App'x 771, 777 (10th Cir. 2006) (declining to find that two positions, which together comprised 190,000 to 210,000 jobs nationally, were present in significant numbers); *Rogers*, 312 F. App'x at 142 (suggesting that 11,000 national jobs was a significant number). *Cf. Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (finding 1.34 million national jobs significant). Jurists in this district have declined to find that similar numbers constitute a significant number of jobs. *See Cain*, 2018 WL 1247876, at *5 n.7 (collecting cases to demonstrate that "the majority of courts in this district considering similar numbers [up to 195,000] decline to determine numerical significance as a matter of law"). Given the guidance from this district, the Court declines to find the number at issue here – 50,000 – qualifies as a "significant" number of national jobs as a matter of law.

Given the Tenth Circuit's preference that the ALJ evaluate numerical significance in the first instance and that the district court supply a dispositive finding only in "exceptional" circumstances, the Court declines to apply harmless error to conclude that 50,000 jobs constitutes a significant number of jobs in the national economy. As a result, the ALJ's step-five findings amounted to reversible error, as he made no finding that the remaining jobs constituted a significant number of jobs in the national economy that Plaintiff could perform.

---

[3] The Commissioner further asserts three unpublished cases from other circuits and a number of District Court decisions also support this theory. The Court is not persuaded by these cases.

## V.     Conclusion

The ALJ erred in failing to resolve a conflict between the VE's testimony and the DOT, and it would be inappropriate for the Court to supply a finding that a significant number of remaining jobs exists that Plaintiff was capable of performing.  Accordingly, the ALJ's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for proper consideration of the evidence and resolution of any existing conflicts.

**SO ORDERED** this 24th day of September, 2020.

*[signature]*
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**